**15-10322**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**GORDON LEROY HALL,**

**Defendant-Appellant.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA (CR-14-00184-NVW-1)

**DEFENDANT - APPELLANT'S OPENING BRIEF**

JON M. SANDS
Federal Public Defender
District of Arizona

DANIEL L. KAPLAN
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007-2730
(602) 382-2767

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ............................................................................. iv

Introduction ........................................................................................ 1

Statement of Bail Status ...................................................................... 2

Statement of Jurisdiction .................................................................... 2

Statement of the Issues ....................................................................... 2

Statement of the Case ......................................................................... 3

    A.    Mr. Hall was sentenced to 180 months of custody on charges unrelated to this case in the District of South Carolina. ...................... 3

    B.    The instant case charges Mr. Hall with sending "false or fictitious" money orders to the IRS. ...................................................... 4

    C.    Mr. Hall's counsel filed a pretrial Motion to Determine Competency, but the district court found Mr. Hall's conduct "feigned" and declined to hold a competency hearing. .............................................. 7

    D.    Mr. Hall permitted the government's proffered plea agreement to lapse, and went to trial before a jury. .................................................. 8

    E.    After a three-day trial, the jury convicted Mr. Hall of violating the "fictitious instruments" statute. ........................................................ 10

    F.    The district court sentenced Mr. Hall to 96 months, to run consecutive to the sentence imposed in the District of South Carolina case. ........................................................................................ 16

Summary of Argument ........................................................................ 17

i

Argument ........................................................................................................ 21

I.    The evidence was insufficient to prove that Mr. Hall violated the
      "fictitious instruments" statute. ................................................... 21

      A.    Standard of Review ........................................................... 21

      B.    The money orders that Mr. Hall sent to the IRS do not implicate
            the "fictitious instruments" statute. .................................. 21

            (1)    Money orders are not "fictitious" but are well-established,
                   real-world financial instruments. .............................. 22

            (2)    The money orders did not purport to be "issued under the
                   authority of the United States." ............................... 28

      C.    The evidence cannot support a finding beyond a reasonable doubt
            that Mr. Hall had the requisite "intent to defraud." ......................... 31

II.   The district court erred in failing to conduct a hearing into Mr. Hall's
      competency to stand trial. ............................................................ 33

      A.    Standard of Review ........................................................... 33

      B.    A reasonable judge should have experienced doubt with respect to
            Mr. Hall's competence. .................................................... 34

III.  The district court imposed unlawful supervised release conditions upon
      Mr. Hall. ................................................................................... 42

      A.    Standard of Review ........................................................... 42

      B.    Four of the supervised release conditions imposed upon Mr. Hall
            violate statutory and constitutional constraints. ................................ 43

            (1)    "[N]ot associate with any person convicted of a felony" ........ 44

(2)    "Work regularly at a lawful occupation" ................................ 46

(3)    "Support your dependents" and meet "family
         responsibilities" ....................................................................... 46

(4)    Major Purchases ...................................................................... 47

C.    The district court's plain error in imposing these conditions
        requires that they be vacated. ............................................................ 48

Conclusion .............................................................................................................. 49

Certificate of Compliance with FRAP 32(a)(7)(B)

Statement Regarding Related Cases

Certificate of Filing and Service

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Chavez v. United States*, 656 F.2d 512 (9th Cir. 1981) ............................................... 39

*de Kaplany v. Enomoto*, 540 F.2d 975 (9th Cir. 1976) (*en banc*) ......................... 33, 42

*Drope v. Missouri*, 420 U.S. 162 (1975) ............................................... *passim*

*Dusky v. United States*, 362 U.S. 402 (1960) ............................................... 35

*Faretta v. California*, 422 U.S. 806 (1975) ............................................... 6

*Jones v. United States*, 529 U.S. 848 (2000) ............................................... 29

*Maxwell v. Roe*, 606 F.3d 561 (9th Cir. 2010) ............................................... *passim*

*Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001) ............................................... 41

*Pate v. Robinson*, 383 U.S. 375 (1966) ............................................... 41

*Torres v. Prunty*, 223 F.3d 1103 (9th Cir. 2000) ............................................... 37

*United States v. Abbouchi*, 502 F.3d 850 (9th Cir. 2007) ............................................... 48

*United States v. Aubrey*, 800 F.3d 1115 (9th Cir. 2015),
 *cert. denied*, 2016 WL 659759 (2016) ............................................... 21

*United States v. Auen*, 846 F.2d 872 (2d Cir. 1988) ............................................... 37

*United States v. Barsumyan*, 517 F.3d 1154 (9th Cir. 2008) ............................................... 48

*United States v. Betts*, 511 F.3d 872 (9th Cir. 2007) ............................................... 43

*United States v. Cope*, 527 F.3d 944 (9th Cir. 2008) ............................................... 42

*United States v. Dreyer*, 705 F.3d 951 (9th Cir. 2013)......................................... 33, 42

*United States v. Duncan*, 643 F.3d 1242 (9th Cir. 2011)............................... 33, 37, 38

*United States v. Goddard*, 537 F.3d 1087 (9th Cir. 2008) ........................................ 46

*United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002) .............................. 44, 46

*United States v. Havelock*, 664 F.3d 1284 (9th Cir. 2012) (*en banc*)....................21, 33

*United States v. Howick*, 263 F.3d 1056 (9th Cir. 2001) ....................................*passim*

*United States v. Johnson*, 610 F.3d 1138 (9th Cir. 2010).............................................5

*United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015) ...................................... 46, 47

*United States v. Katakis*, 800 F.3d 1017 (9th Cir. 2015)............................................ 32

*United States v. Morganfield*, 501 F.3d 453 (5th Cir. 2007) .............................. 26, 27

*United States v. Neal*, 776 F.3d 645 (9th Cir. 2014) ................................................. 38

*United States v. Olano*, 507 U.S. 725 (1993)............................................................ 48

*United States v. Salman*, 531 F.3d 1007 (9th Cir. 2008)..............................25, 27, 28

*United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007)............................................. 44

*United States v. Tapia*, 665 F.3d 1059 (9th Cir. 2011) ................................. 42, 43, 48

*United States v. Washington*, 584 F. App'x 846 (9th Cir. 2014)............................... 47

*United States v. Weber*, 451 F.3d 552 (9th Cir. 2006)......................................... 43, 44

*United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012) .............................. 45, 46

*Webster v. Fall*, 266 U.S. 507 (1925) ........................................................28

## Statutes

18 U.S.C. § 472 ..................................................................... 22, 23

18 U.S.C. § 513(c) ........................................................................ 29

18 U.S.C. § 514 ......................................................................*passim*

18 U.S.C. § 514(a) ................................................................... 4, 21

18 U.S.C. § 514(b) ........................................................................ 29

18 U.S.C. § 3231 ............................................................................. 2

18 U.S.C. § 3583 ........................................................................... 20

18 U.S.C. § 3583(d)(1) ............................................................. 43, 45

18 U.S.C. § 3583(d)(2) .................................................................. 43

18 U.S.C. § 3742 ............................................................................. 2

18 U.S.C. § 4241 .................................................................7, 34, 35

18 U.S.C. § 4241(a) ........................................................3, 19, 33, 36

18 U.S.C. § 4241(c) ....................................................................... 35

18 U.S.C. § 4247(d) ................................................................35, 36

28 U.S.C. § 1291 ............................................................................. 2

## Other Authorities

141 Cong. Rec. S9533-34 ........................................................... 23

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ................................. 40

*Black's Law Dictionary* (Westlaw 2016) ................................. 31

U.C.C. § 3-103(a)(2) (Westlaw 2016) .................................. 30

U.C.C. § 3-104 (Westlaw 2016) ............................................ 25

Univ. of North Carolina School of Government, *A Quick Guide to Sovereign Citizens* (Sep. 2012) ................................................. 5

## Rules

FRAP 4(b) ................................................................................. 2

**Introduction**

Gordon Leroy Hall is a 62-year-old Army veteran and native of San Diego, California. Mr. Hall's statements and conduct indicate that he subscribes to the "sovereign citizen" belief system, which this Court has characterized as "an absurd legal theory wrapped up in Uniform Commercial Code gibberish." In 2014, the District Court for the District of South Carolina sentenced Mr. Hall to 180 months of custody on his no-contest plea to a charge of participating in a Ponzi scheme. Around the same time, the government filed the indictment underlying the instant case in the District of Arizona, charging Mr. Hall with sending two "false or fictitious" money orders to the IRS. The government offered Mr. Hall a plea deal under which his sentence in the instant case would have been entirely concurrent with his sentence in the District of South Carolina case, adding no additional prison time. Rather than accepting the deal, Mr. Hall persisted in expressing inscrutable "sovereign citizen" language to the court, allowed the offer to lapse, and went to trial. Mr. Hall's counsel repeatedly raised concerns about Mr. Hall's competency to stand trial, but the district court declined to hold a hearing on the matter. The jury convicted Mr. Hall, and the district court sentenced him to 96 months of imprisonment, to run consecutive to the sentence imposed in the District of South Carolina case. This appeal followed.

## Statement of Bail Status

Mr. Hall is currently in the custody of the United States Bureau of Prisons, serving the combination of the 180-month sentence imposed in *United States v. Hall*, No. 13-cr-170 (D.S.C.), and the 96-month consecutive sentence imposed in the judgment here appealed.[1] (Footnotes in this brief contain only titles and pertinent page and line numbers of cited documents.) Mr. Hall's projected release date is March 27, 2033.

## Statement of Jurisdiction

The District Court for the District of Arizona (Wake, D.J.) had jurisdiction over the United States' federal criminal charges against Mr. Hall pursuant to 18 U.S.C. § 3231. The district court entered its judgment on June 17, 2015.[2] A timely notice of appeal was filed five days later.[3] FRAP 4(b). This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## Statement of the Issues

**I. Insufficiency of the evidence.** Was the evidence sufficient to prove beyond a reasonable doubt that the money orders Mr. Hall sent to the IRS were "false or fictitious," purported to be "issued under the authority of the United

---

[1] Clerk's Record ("CR") Doc. 154; Defendant-Appellant's Excerpts of Record ("ER") Vol. 5 at 1088-91.

[2] *Id.*

[3] CR Doc. 156; ER Vol. 5 at 1099-1100.

States," and were sent with the "intent to defraud," as required by the statute he was convicted of violating?

**II. Failure to conduct competency hearing.** Pursuant to 18 U.S.C. § 4241(a), a district court "shall" hold a hearing on the defendant's competency to stand trial where there is "reasonable cause" to doubt that the defendant has the ability to understand the nature and consequences of the proceedings or to assist properly in his defense. Did the district court err in denying Mr. Hall's counsel's motion for a competency hearing, in the face of substantial evidence of Mr. Hall's bizarre, uncooperative, and self-defeating statements and behavior?

**III. Unlawful supervised release conditions.** Did the district court err in imposing supervised release conditions that are inconsistent with the governing statute, impermissibly vague, arbitrary, or violative of Mr. Hall's Fifth Amendment right to due process of law?

### Statement of the Case

### A. Mr. Hall was sentenced to 180 months of custody on charges unrelated to this case in the District of South Carolina.

Gordon Leroy Hall is a 62-year-old United States Army veteran and native of San Diego, California.[4] In the summer of 2013, the government charged Mr. Hall and his son Benton Hall in the United States District Court for the District of

---

[4] Presentence Report at 3, 12 (¶ 41), 14 (¶ 52).

South Carolina with several crimes relating to their alleged involvement in a Ponzi scheme.[5] After filing a number of *pro se* documents and unsuccessfully seeking permission to represent himself, Mr. Hall entered a *nolo contendere* plea to one count of the indictment, and the District of South Carolina court sentenced him to 180 months of imprisonment.[6]

## B. The instant case charges Mr. Hall with sending "false or fictitious" money orders to the IRS.

While the District of South Carolina case was underway, the government filed the indictment underlying the instant case in the District of Arizona.[7] This indictment charged Mr. Hall, Benton Hall, and Brandon Adams with four violations of 18 U.S.C. § 514, which outlaws the "mak[ing]" and "pass[ing]," with "the intent to defraud," of a "false or fictitious instrument . . . appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States." *Id.* § 514(a). (The complete statute is reproduced in the addendum to this brief.) Counts 1 through 4 of the indictment charged the defendants with "mak[ing]" and "pass[ing]" two "fictitious" money orders in January of 2013. (The fifth and final count of the indictment, which charged prohibited possession

---

[5] *United States v. Hall*, No. 13-cr-170 (D.S.C.) (Entry No. 48).
[6] *Id.* (Entry Nos. 126, 146, 223, 276, 302).
[7] ER Vol. 2 at 7-10.

of firearms, was severed from the case and later dismissed on the government's

motion.[8]) Benton Hall and Mr. Adams pleaded guilty to Counts 3 and 4 of the

indictment,[9] and Mr. Hall went to trial alone.

When the magistrate judge asked Mr. Hall to confirm his name at the initial

appearance, Mr. Hall responded as follows:

> I'm here today as trustee in this matter to appoint the chief
> financial officer of this court to produce the original charging
> accusatory instrument for my inspection and execution so we can
> resolve this matter now.[10]

This statement was reflective of Mr. Hall's adherence to the "sovereign citizen"

belief system, which this Court has described as "an absurd legal theory wrapped

up in Uniform Commercial Code gibberish." *United States v. Johnson*, 610 F.3d

1138, 1140 (9th Cir. 2010); *see also* Univ. of North Carolina School of Government,

*A Quick Guide to Sovereign Citizens* 2 (Sep. 2012) (explaining that sovereign citizens

seek to avoid "inadvertent subjection" to "false government" by identifying

themselves as trustee, rather than individual named in indictment). Mr. Hall went

on to waive his right to a court-appointed attorney.[11] The government filed a

---

[8] ER Vol. 2 at 232:23-25; CR Docs. 104, 105.
[9] CR Docs. 87, 89.
[10] ER Vol. 2 at 12:13-16.
[11] ER Vol. 2 at 12:20-15:16.

motion for a *Faretta* hearing into the validity of Mr. Hall's waiver of counsel (*Faretta v. California*, 422 U.S. 806 (1975)),[12] which the district court granted.[13]

Between the initial appearance and the *Faretta* hearing, Mr. Hall filed a *pro se* document captioned "Petition for Court to Take Mandatory Judicial Notice of Sealed Filing in Chambers."[14] Among other things, the petition asked the court to "take mandatory judicial notice of the Defendant's non-negotiable endorsement and assignment of the property titles in this Matter by appointment of a fiduciary to process the transfer of equitable title to the fiduciary and to resolve the accounting in this Matter to discharge the public accounting and to setoff the private accounts."[15]

At the *Faretta* hearing, when the district court asked Mr. Hall why he should be allowed to proceed without a lawyer, Mr. Hall responded with more "sovereign citizen" language:

> Well, I conditionally accept that we need to proceed any further on proof of claim that the record set forth in public and private showing the establishment of a trust for setoff settlement enclosure for discharge for the public liability does not make the provisions of a *Faretta* hearing for a defendant in dishonor moot.[16]

---

[12] ER Vol. 2 at 38-87.

[13] CR Doc. 36.

[14] ER Vol. 2 at 88-91.

[15] *Id*. at 88.

[16] *Id*. at 116:1-6.

After further similarly unproductive exchanges, the district court declared Mr.

Hall's comments "nonsensical and in bad faith" and denied his request to proceed

without counsel.[17]

### C. Mr. Hall's counsel filed a pretrial Motion to Determine Competency, but the district court found Mr. Hall's conduct "feigned" and declined to hold a competency hearing.

Several months later Mr. Hall's appointed counsel filed a Motion to

Determine Competency, in which he "request[ed] that th[e court] conduct a

preliminary hearing under 18 U.S.C. §4241 to determine whether the defendant is

competent to stand trial and make decisions regarding the case pending against

him."[18] Counsel explained that his communications with Mr. Hall had been

"problematic" and neither "fruitful" nor "productive," and that he felt compelled

to raise the issue of Mr. Hall's competency with the court.[19] The following month

Mr. Hall's counsel filed a Motion to Withdraw as Counsel, in which he explained

that his request was motivated in part by "the issue of [Mr. Hall's] competency."[20]

During the sealed, *ex parte* portion of the subsequent motion hearing, Mr.

Hall's counsel described the difficulties he had encountered in trying to

communicate with Mr. Hall, and his perception of Mr. Hall's degree of

---

[17] *Id*. at 123:14-25.
[18] ER Vol. 2 at 140-44.
[19] *Id*. at 141.
[20] *Id*. at 145-48.

understanding of the nature of the proceedings.[21] During the open portion of the same hearing, the government informed the court that a competency assessment of Mr. Hall had been conducted in connection with the District of South Carolina case, and that efforts were underway to have the report unsealed so it could be provided to the court.[22] The court "restate[d] what [it] stated in the ex parte portion" of the hearing, announcing that it found Mr. Hall's conduct "feigned" and reflective of "a refusal to acknowledge what he understands about these proceedings."[23] The court also stated that it would review the competency assessment when it became available, and asserted (incorrectly) that "[t]here has not been a request for a competency determination here."[24]

### D. Mr. Hall permitted the government's proffered plea agreement to lapse, and went to trial before a jury.

Mr. Hall's counsel then suggested that the government make a record of its pending plea offer, noting that he had "already made a record as to how many times I have tried to talk to him about this" and that Mr. Hall "has a copy of the plea."[25] The government confirmed that it was offering Mr. Hall a plea agreement that included a stipulation under which the sentence in the instant case would be

---

[21] ER Vol. 6 at 1117-42.
[22] ER Vol. 2 at 156:14-21.
[23] *Id*. at 162:3-6.
[24] *Id*. at 160:21-161:6.
[25] *Id*. at 171:1-25.

fully concurrent with – *i.e.*, would not add any additional incarceration to – the sentence Mr. Hall was serving in connection with the District of South Carolina case.[26]

At the final pretrial conference conducted one week later, the government confirmed that its proffered plea agreement remained open through the day of the hearing.[27] At Mr. Hall's counsel's request, the court then conducted another sealed, *ex parte* hearing.[28] In that hearing, Mr. Hall's counsel described to the court Mr. Hall's actions with respect to the proffered plea agreement and preparations for the upcoming trial. Mr. Hall's counsel and the court also discussed the content of the competency report generated in connection with the District of South Carolina case, which had found Mr. Hall competent to stand trial.[29] (A motion to correct the record to include this report is being filed with this brief; if the motion is denied, the Court should disregard references to the content of the report in this brief.) The court adhered to its prior ruling regarding Mr. Hall's competency.[30]

Before the opening statements on the first day of trial, the court noted that Mr. Hall had "elect[ed] to be present in the prison garb rather than civilian garb,"

---

[26] *Id*. at 172:1-8.
[27] *Id*. at 210:3-213:5.
[28] ER Vol. 6 at 1143-58.
[29] *Id*. at 1150:23-1154:11.
[30] *Id*. at 1154:4-11.

and asked Mr. Hall whether he intended to disrupt the proceedings.[31] When Mr. Hall responded with more "sovereign citizen" language, the court reiterated its finding that Mr. Hall's conduct was in "bad faith" and "intentional."[32] After jury selection, Mr. Hall's counsel informed the court that when he had asked Mr. Hall whether he wanted to help with picking jurors, Mr. Hall had responded by asking "why would I need to do that" or words to that effect, and then walking away.[33]

### E.  After a three-day trial, the jury convicted Mr. Hall of violating the "fictitious instruments" statute.

In its opening statement, the government asserted that Mr. Hall had delivered two bogus money orders to the IRS with the intention of "mak[ing his] tax debts go away."[34] Mr. Hall's counsel countered that the money orders Mr. Hall sent were actually his way of "telling the IRS in so many words to go to hell."[35]

The government's first witness, IRS Revenue Officer T.W. Lyons, described the essential facts underlying the charges. By the beginning of 2013, Officer Lyons and his predecessor had spent almost a decade trying to get Mr. Hall to satisfy his past-due tax obligations.[36] Instead of receiving valid payment, Officer Lyons and his

---

[31] ER Vol. 2 at 220:20-222:3.
[32] *Id*. at 222:4-23.
[33] *Id*. at 236:24-237:12.
[34] *Id*. at 253:3-9.
[35] *Id*. at 263:3-6.
[36] ER Vol. 3 at 349:14-16.

predecessor had received a multitude of thick packets of documents containing inscrutable "sovereign citizen"-type language, which they had generally forwarded to the IRS's "frivolous return program."[37] In mid-January of 2013, however, Mr. Hall left Officer Lyons a voicemail requesting a "payoff" amount for his past-due taxes.[38] Officer Lyons called Mr. Hall and gave him payoff amounts for the two tax years that had recently been audited: $868,397.60 for 1996, and $635,176.26 for 1997.[39] Mr. Hall said he would send the payments.[40]

One week later, Officer Lyons received two money orders made out for these amounts.[41] One of the money orders, which were identical except for the amounts, is pictured below in Figure 1.

---

[37] *Id.* at 301:18-316:21.

[38] *Id.* at 273:9-13.

[39] *Id.* at 273:1-275:11, 280:25-283:9.

[40] *Id.* at 275:5-8.

[41] *Id.* at 277:6-283:16; ER Vol. 4 at 863-72.



**Figure 1: Trial Exhibit 1 (excerpt) (ER Vol. 4 at 864)**

Each money order was accompanied by a completed IRS 1040-V payment voucher form and an "Affidavit of Service."[42]

Although government expert witness William C. Kerr would testify that the money orders "ha[d] the criteria for a real money order" and were "in a format that you would normally see for a money order if you purchased it,"[43] they were incapable of causing any funds to be transferred, in light of the particular information listed on them.[44] The money orders listed Treasury Secretary Timothy Geithner as the drawee, effectively directing the Treasury Secretary to pay the specified amounts to the Treasury Department to discharge Mr. Hall's tax obligations.[45] Rather than listing the routing number of a bank holding an account belonging to Mr. Hall, the money orders listed the routing number for the Federal Reserve Bank of Atlanta.[46] And instead of listing the number of an account belonging to Mr. Hall, the money orders listed Mr. Hall's social security number.[47] These features were consistent with "redemption theory," an aspect of the "sovereign citizen" belief system holding that "there's a secret account that's tied

---

[42] ER Vol. 4 at 866-67, 871-72.
[43] *Id*. at 705:6-7, 717:15-18.
[44] *Id*. at 717:19-718:3.
[45] *Id*. at 714:20-719:9.
[46] *Id*. at 710:1-711:5.
[47] *Id*. at 711:25-712:16.

to . . . your social security number and that you can obtain funds from that account using your social security number."[48]

Because the specified bank account does not exist, there was no chance of the money orders giving rise to any actual transfer of funds, even if they were sent on for processing.[49] They were not, because after studying them for five minutes, Officer Lyons "quickly determined" that they were fake.[50]

The IRS, FBI, and Postal Inspection Service conducted an investigation into Mr. Hall's actions. IRS agents searched his home and business, as well as the home of his codefendant Brandon Adams.[51] They discovered that Mr. Hall, together with Mr. Adams and Benton Hall, had been running a business that involved the production of similar money orders for clients across the nation.[52] Agents of the FBI searched Mr. Adams' home, where they found the printer and stock paper used to print the money orders.[53] Mr. Hall's daughter Shannon Taylor Hall and family friend Brighton Nicole Jorgensen, both of whom had worked for Mr. Hall,

---

[48] ER Vol. 3 at 483:19-484:4.

[49] ER Vol. 4 at 717:19-718:3.

[50] ER Vol. 3 at 347:23-25.

[51] *Id*. at 451:24-456:10.

[52] *Id*. at 456:11-481:3.

[53] *Id*. at 570:6-581:11.

testified that the business had over one hundred clients, who came to it for assistance with debts and other problems.[54]

After the government rested, Mr. Hall's counsel requested another sealed, *ex parte* hearing.[55] At the hearing, Mr. Hall's counsel discussed Mr. Hall's conduct and understanding of the proceedings. The court adhered to its earlier conclusions with respect to Mr. Hall's competence.[56] Mr. Hall's counsel then rested without presenting evidence.[57] After the jury was excused Mr. Hall's counsel made a motion for a judgment of acquittal, arguing that "the government hasn't submitted sufficient evidence on every element of the charge before the jury," which the court deemed timely and denied.[58]

In its closing argument, the government argued that Mr. Hall's money orders qualified as "fictitious" because "no matter how real those money orders appeared to be[] . . . they were, in fact, tied to nothing and worth nothing."[59] Mr. Hall's counsel argued that the money orders were actually intended as a transparently bogus "[t]humb in your eye" to the IRS.[60] The government in

---

[54] *Id.* at 500:25-534:4; ER Vol. 3 at 592:24 – ER Vol. 4 at 645:22.
[55] ER Vol. 6 at 1159-70.
[56] *Id.* at 1167:23-25.
[57] ER Vol. 4 at 749:16-18.
[58] *Id.* at 780:16-781:3, 786:14-788:15.
[59] *Id.* at 807:2-8.
[60] *Id.* at 842:3-11.

rebuttal countered: "Why call the IRS if you didn't believe in the government?"[61] The jury found Mr. Hall guilty on all counts.[62]

Between the end of his trial and his sentencing, Mr. Hall sent the court several *pro se* documents containing "sovereign citizen" language.[63] Mr. Hall's counsel filed a motion to continue the sentencing and a motion to withdraw, both of which reported that Mr. Hall was refusing to cooperate with him.[64] Just before the sentencing hearing the court held yet another sealed, *ex parte* hearing, at which Mr. Hall's counsel discussed Mr. Hall's understanding of the proceedings and cooperation.[65] The court denied Mr. Hall's motion to withdraw and declined to reschedule the sentencing hearing.[66]

### F. The district court sentenced Mr. Hall to 96 months, to run consecutive to the sentence imposed in the District of South Carolina case.

At the sentencing hearing, Mr. Hall's counsel stated that he had no objection to the presentence report.[67] When permitted to allocute, Mr. Hall again spoke in

---

[61] *Id.* at 844:19-20.
[62] *Id.* at 861-62.
[63] ER Vol. 5 at 1020-1023.
[64] *Id.* at 1024-1034.
[65] ER Vol. 6 at 1171-83.
[66] *Id.* at 1180:18-1181:4.
[67] ER Vol. 5 at 1044:8-18.

"sovereign citizen" language.[68] Mr. Hall's counsel noted that he had heard from Mr. Hall's daughter Shannon that it was after Mr. Hall lost two children "while he was in custody in the early part of the decade" that he "kind of lost his mind and he became really enwrapped in this."[69]

Stressing that Mr. Hall could remain a threat to the public for a substantial period of time, the court sentenced him to 96 months of incarceration, specifying that this term will run consecutive to Mr. Hall's sentence in the District of South Carolina case.[70] The court also imposed a five-year term of supervised release, during which Mr. Hall will be required to comply with a number of standard and special supervised release conditions.[71] Five days after the judgment was entered, Mr. Hall filed yet another *pro se* notice containing "sovereign citizen" language.[72] Mr. Hall's counsel filed this timely appeal.[73]

## Summary of Argument

**I. Insufficiency of the evidence.** The statute that Mr. Hall was convicted of violating, 18 U.S.C. § 514, applies only to the making or passing of financial instruments that are "false or fictitious," purport to be "issued under the authority

---

[68] *Id.* at 1057:10-23.

[69] *Id.* at 1065:19-24.

[70] *Id.* at 1074:10-1080:7.

[71] *Id.* at 1080:23-1082:11, 1089-90.

[72] *Id.* at 1092-98.

[73] *Id.* at 1099-1100.

17

of the United States" or an "organization," and are made or passed with the "intent to defraud." The evidence failed to prove any of these essential elements with respect to the money orders that Mr. Hall sent to the IRS.

The money orders were not "false or fictitious" because this Court has held that this language describes "nonexistent instruments" of which there are "no genuine versions" – whereas money orders are a well-known and commonplace instrument, "genuine versions" of which abound. The money orders bore no seal, motto, portrait, or other feature suggesting that they were issued under the authority of the federal government, and in fact the only apparent "authority" underlying them was that of Mr. Hall – a private citizen and not an "organization" as defined in the statute. Finally, the only rational conclusions that the jury could reach with respect to Mr. Hall's intent were that he genuinely believed in "sovereign citizen" principles – in which case his money orders would have represented a good-faith effort to satisfy his tax debts – or that he only pretended to do so – in which case he would have understood that his money orders could not possibly "defraud" anyone out of anything.

In view of any or all of these independently-fatal flaws in the government's evidence, the Court should reverse his convictions and remand the case with instructions to enter a judgment of acquittal.

**II. Failure to conduct competency hearing.** Pursuant to 18 U.S.C. § 4241(a), a district court "shall" hold a hearing into the defendant's competency to stand trial where there is "reasonable cause" to doubt that he is able to "understand the nature and consequences of the proceedings against him or to assist properly in his defense." Here, although Mr. Hall's counsel filed a pretrial motion for a competency hearing and repeatedly expressed doubt about his competency, the district court declined to hold such a hearing. This was error, because there was ample "reasonable cause" to doubt Mr. Hall's competency, including his apparent failure to understand the proceedings, his refusal to cooperate or communicate with his counsel, his willful actions tending to tarnish his image in the eyes of the judge and the jurors, his filing of bizarre and inscrutable papers with the district court, and his failure to accept a plea deal under which he would have served no additional prison time beyond what he was already serving in connection with another case – eventually resulting in his being sentenced to *96 months* of additional prison time.

In light of the district court's error in declining to conduct a competency hearing in the face of these facts, this Court should vacate Mr. Hall's convictions and remand the case with instructions that the district court hold a hearing on Mr.

Hall's competency at the time of his trial or, if it finds that the matter cannot be reliably assessed, grant him a new trial.

**III. Unlawful supervised release conditions.** Pursuant to 18 U.S.C. § 3583, the Fifth Amendment's Due Process Clause, and this Court's precedent, discretionary supervised release conditions must comply with a number of constraints. When imposing such conditions, the sentencing court must make an individualized determination that they are reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender, and that they will advance these goals in a manner that involves no greater deprivation of the defendant's liberty than is reasonably necessary. Conditions that implicate a particularly significant liberty interest must be supported by record evidence and by express findings that these criteria are met. Conditions that fail to give the defendant fair notice of what is required or prohibited violate his right to due process of law.

Because four of the supervised release conditions that the district court imposed upon Mr. Hall violate these requirements, the Court should vacate these conditions and remand the case for resentencing.

## Argument

## I. The evidence was insufficient to prove that Mr. Hall violated the "fictitious instruments" statute.

### A. Standard of Review

This Court applies *de novo* review to the denial of a motion for a judgment of acquittal, *United States v. Aubrey*, 800 F.3d 1115, 1124 (9th Cir. 2015), *cert. denied*, 2016 WL 659759 (2016), as well as to matters of statutory interpretation. *United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012) (*en banc*).

### B. The money orders that Mr. Hall sent to the IRS do not implicate the "fictitious instruments" statute.

The statute that the government used to prosecute Mr. Hall is 18 U.S.C. § 514(a), which reads as follows:

(a) Whoever, with the intent to defraud—

(1) draws, prints, processes, produces, publishes, or otherwise makes, or attempts or causes the same, within the United States;

(2) passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States; or

(3) utilizes interstate or foreign commerce, including the use of the mails or wire, radio, or other electronic communication, to transmit, transport, ship, move, transfer, or attempts or causes the same, to, from, or through the United States,

any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to

21

be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization, shall be guilty of a class B felony.

But the evidence failed to establish any violation of this statute, in two respects: First, the money orders that Mr. Hall sent to the IRS are not "false or fictitious" as these terms have been construed by this Court's controlling precedent; and second, these money orders did not appear, represent, purport or contrive to be issued under the authority of the United States.

### (1) Money orders are not "fictitious" but are well-established, real-world financial instruments.

The leading case on the meaning and scope of section 514 is this Court's opinion in *United States v. Howick*, 263 F.3d 1056 (9th Cir. 2001). In *Howick*, the Court addressed the statute's application to a defendant who received a package containing an array of illicit financial documents. Some were bogus gold and silver certificates resembling certificates that the Treasury Department issued for several decades in the nineteenth and twentieth centuries, which the government prosecuted under the counterfeiting statute, 18 U.S.C. § 472. *Howick*, 263 F.3d at 1059-60 & n.2. Others were "contrived obligations" that did not resemble any real-world financial instrument – "federal reserve notes in the improbable denominations of $100,000,000 and $500,000,000." *Id*. at 1061. These notes were

"[p]rinted by silk screen," "completely blank on one side," "approximately twice as large as ordinary bills," and bore portraits of George Washington and William McKinley. *Id*. Their "eye-poppingly large" denominations were thousands of times higher than the highest-denomination currency ever actually printed. *Id*. The government prosecuted the defendant's receipt of these instruments under section 514.

The Court held that these notes fell within section 514. The Court noted that section 514 was a "rather new statute" that differs from the "preexisting counterfeit statute, section 472, which reaches 'falsely made, forged, [and] counterfeit' obligations. *Howick*, 263 F.3d at 1066. Because section 514 instead applied to "'false or fictitious' obligations, so long as they appear to be 'actual,'" the Court concluded that section 514 "was intended to criminalize a range of behavior not reached by section 472." *Id*. Looking to the statute's legislative history, the Court further noted that Congress's intent in enacting it was to close a loophole by addressing bogus instruments that "'are not counterfeits of any existing negotiable instrument,'" and thus cannot be prosecuted under the laws criminalizing counterfeiting. *Id*. at 1066-67 (quoting 141 Cong. Rec. S9533-34 (remarks of Sen. D'Amato)) (emphasis removed). The Court accordingly construed section 514's use of the phrase "false or fictitious instrument" to

describe "nonexistent instruments," or instruments "of which there are no genuine versions," provided that they "bear[] a family resemblance to genuine financial instruments." *Id.* at 1067-68.

One look at the money orders at the core of this case reveals the fatal flaw in the government's employment of section 514 to prosecute Mr. Hall: The two documents underlying this prosecution are *not* "nonexistent instruments" of which there are "no genuine versions." They are money orders, which are real-life – in fact, commonplace – financial instruments. Indeed, Mr. Hall's counsel introduced several genuine money orders in evidence at trial,[74] and government expert William Kerr confirmed that a money order "is an instrument that we normally see that would be recognizable by most people."[75] Moreover, Mr. Kerr confirmed that these money orders "ha[d] the requirements for a financial instrument," were "in a format that you would normally see for a money order," and "ha[d] the criteria for a real money order."[76]

Mr. Kerr went on to claim, and the government went on to argue, that these documents were nevertheless "fictitious" instruments[77] – but that assertion flies in the face of *Howick*. Mr. Kerr asserted that the "fictitious" nature of Mr. Hall's

---

[74] ER Vol. 4 at 722:24-723:3; ER Vol. 5 at 1016-19.
[75] ER Vol. 4 at 706:5-7.
[76] *Id.* at 704:25-705:7, 717:15-18.
[77] *Id.* at 705:8-13.

24

money orders is revealed "when you look at it and see where it is payable from"[78] –
*i.e.*, a nonexistent account in the Treasury Department.[79] But while this aspect of
the money orders renders them "worthless,"[80] it does not transform them into
"nonexistent instruments" of which there are "no genuine versions," any more
than a computer glitch causing the account number on an ordinary bank check to be
misprinted would transform the check into a "nonexistent instrument[]" of which
there are "no genuine versions."

Nor is it relevant that these money orders were printed by Mr. Hall's
company, rather than by a bank, post office, supermarket, or other mainstream
commercial entity. Being printed by such an entity is not a prerequisite for a
document to qualify as negotiable instrument. *See* U.C.C. § 3-104 (Westlaw 2016)
(enumerating requisites of negotiable instruments). Indeed, Mr. Kerr confirmed
that "you can write a check to someone just on a blank piece of paper," and that a
money order simply "printed on plain paper" could appear legitimate, provided
that it contained the necessary information.[81] *Accord United States v. Salman*, 531
F.3d 1007, 1010 (9th Cir. 2008) (government expert testified that formal features
normally associated with a check are not "required for a check to be valid"). It

---

[78] *Id.* at 705:8-9.
[79] *Id.* at 717:19-718:3.
[80] *Id.* at 740:15.
[81] ER Vol. 4 at 714:10-11, 744:7-16.

follows that the "homemade" nature of Mr. Hall's money orders does nothing to mark them as "false or fictitious."

The Fifth Circuit's opinion in *United States v. Morganfield*, 501 F.3d 453 (5th Cir. 2007), is closely on point. In *Morganfield*, the defendants engaged in a "check cashing scheme" that involved registering nonexistent shell companies to obtain d/b/a certificates, and using the certificates, as well as bought or stolen personal identifications, to open commercial checking accounts at banks. *Id*. at 456. The defendants made small initial deposits in the accounts, then made the bank-issued checks, styled as payroll checks, payable to fake payees using bought or stolen identifications. *Id*. at 456-57. The checks were "signed with the name of a nonexistent person" and made out for amounts exceeding the value of the deposits used to open the accounts. *Id*. at 457. The defendants then cashed the checks at "unsuspecting grocery and convenience stores." *Id.*

Relying heavily on this Court's opinion in *Howick*, the Fifth Circuit found that these defendants had not violated section 514 "because a check, even if it is worthless, is not, as a matter of law, a 'false or fictitious instrument.'" *Id*. The court noted that the statute's language draws a distinction between instruments that are "false or fictitious," meaning "not real or imaginary," and "actual" – meaning "existing in fact or reality" – securities. *Id*. at 459. Thus, while the

26

defendants' actions were "plainly illegal" and might have been prosecutable as forgeries or counterfeits, "the government charged [the defendants] under the wrong section." *Id.* at 460.

The same is true here. Like the checks in *Morganfield*, the money orders that Mr. Hall sent to the IRS were worthless, but not "false or fictitious." They had the format and all the requisite elements of an "existing in fact or reality" financial instrument, but were worthless because of the specific account information listed on them. Indeed, Mr. Kerr specifically analogized Mr. Hall's money orders to a "worthless check."[82] In short, the government might well have been able to prosecute Mr. Hall under other statutes – but because the language of section 514 does not apply to the money orders that Mr. Hall sent to the IRS, it erred by charging him "under the wrong section." *Morganfield*, 501 F.3d at 460.

This Court's opinion in *United States v. Salman* is not to the contrary. In *Salman*, the defendant sent the IRS documents appearing to discharge his tax obligations labeled "SIGHT DRAFT," which "included many characteristics common to a check," but purported to direct the Treasury Department to pay the IRS the amount he owed in taxes. *Salman*, 531 F.3d at 1009, App. A. Although the defendant presented testimony indicating that the "sight drafts" were designed

---

[82] ER Vol. 4 at 740:17.

with the intention that they "could not be considered as any one specific type of instrument," the government's experts testified that a "sight draft" is an existing type of financial instrument, and thus the defendant might have been able to raise an argument similar to the one presented here. *Id.* at 1010. But he did not. *Id.* at 1011 (summarizing the appellant's arguments). The *Salman* Court accordingly did not address or decide the merits of any such argument. Because "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents," *Salman* does not undermine Mr. Hall's argument here. *Webster v. Fall*, 266 U.S. 507, 511 (1925).

In short, because even a worthless, homemade money order is not a "nonexistent instrument[]" of which there are "no genuine versions" (*Howick*, 263 F.3d at 1067), Mr. Hall's actions did not breach section 514, and his convictions must be vacated.

### (2) The money orders did not purport to be "issued under the authority of the United States."

Even if these money orders did qualify as "false or fictitious," they still would not fall within section 514 because of another, independently-fatal flaw: They did not purport to be "issued under the authority of the United States."

28

Section 514 applies only to a "false or fictitious" item "appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization." 18 U.S.C. § 514(a). The term "organization" is defined, by cross-reference to 18 U.S.C. § 513(c) (*id.* § 514(b)), as "a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, society, union, or any other association of persons which operates in or the activities of which affect interstate or foreign commerce." 18 U.S.C. § 513(c). Because this cross-referenced language contains the statute's sole reference to interstate commerce, it presumably represents Congress's effort to justify the statute as an exercise of its commerce power. Strict enforcement of this language is thus especially important, to ensure that the statute's reach does not exceed its constitutional grasp. *Cf. Jones v. United States*, 529 U.S. 848 (2000) (strictly construing federal arson statute's jurisdictional element to avoid unconstitutionality).

The indictment seeks to fit Mr. Hall's money orders within this language by characterizing them as "appearing, representing, purporting, and contriving

through scheme and artifice to be . . . issued under the authority of the United States."[83] Here again, the Court need not look beyond the money orders to recognize a fatal flaw in the government's case: The money orders do *not* purport to be issued under the authority of the United States. They contain no statements to that effect, and – in sharp contrast to the instruments at issue in *Howick* – they bear no official seal, crest, motto, portrait, or logo associated (or appearing or purporting to be associated) with the United States Government. *Howick*, 263 F.3d at 1061. Their only references to the federal government consist of their identification of the Treasury Department as both the drawee – *i.e.*, the entity being ordered to pay the amounts specified (U.C.C. § 3-103(a)(4) (Westlaw 2016)) – and the entity to which the payments were to be directed.[84] To the extent that the money orders purport to be issued under anyone's "authority," the person exercising that authority would be Mr. Hall – who, by signing the document as drawer, becomes the "person ordering payment." *Id.* § 3-103(a)(5). The statute, however, does not apply to instruments that appear to be issued under the authority of a private individual. 18 U.S.C. § 514(a).

Thus, regardless of whether they qualify as "false or fictitious," the money orders underlying this case would not fall with section 514. For either or both of the

---

[83] ER Vol. 2 at 7-8.
[84] ER Vol. 4 at 864, 869.

reasons set forth above, section 514 does not apply to the two money orders that Mr. Hall sent to the IRS.

## C. The evidence cannot support a finding beyond a reasonable doubt that Mr. Hall had the requisite "intent to defraud."

In addition to requiring an involvement with specified types of purported financial instruments, section 514 requires an "intent to defraud." 18 U.S.C. § 514(a). But on the evidence presented here, no reasonable jury could find that Mr. Hall acted with such an intent.

The evidence showed that the money orders Mr. Hall sent to the IRS directed payment of his tax obligations from a nonexistent account, keyed to his social security number and maintained in the Treasury Department. The evidence also showed that Mr. Hall appeared to subscribe to a "sovereign citizen" belief system, under which such accounts actually existed and could be drawn upon to satisfy a citizen's tax obligations. It was up to the jury, of course, to decide whether Mr. Hall sincerely believed in these principles – but whether they did or not is immaterial, because in neither event could they rationally find an intent to defraud.

An intent to defraud is an intent "[t]o cause injury or loss to (a person or organization) by deceit." *Defraud*, Black's Law Dictionary (10th ed. 2014). If the jury concluded that Mr. Hall sincerely believed in the existence of the account referenced in the money orders, it could not rationally conclude that he intended to

cause the government "injury or loss" by directing funds to be transferred from that account to discharge his tax obligations. Under those circumstances, Mr. Hall's intent was to use his valid Treasury account to pay his taxes. If the jury instead concluded that Mr. Hall understood that no such account existed (as both the government and Mr. Hall's trial counsel argued), it could not rationally conclude that he intended to cause the government "injury or loss" by directing that his tax debt be paid with nonexistent money contained in an imaginary account. Regardless of which inference the jury drew, the evidence could not support a "logical chain of inference" supporting the conclusion that Mr. Hall acted with the "intent to defraud" required by section 514. *United States v. Katakis*, 800 F.3d 1017, 1025 (9th Cir. 2015). The evidence was thus insufficient to support Mr. Hall's convictions. *Id.*

Each of the three flaws in the government's evidence outlined above – its failure to show that Mr. Hall made or passed "false or fictitious" financial instruments, its failure to show that Mr. Hall made or passed instruments appearing or purporting to be "issued under the authority of" the United States or an organization, and its failure to support a logical chain of inference leading to the conclusion that Mr. Hall acted with the "intent to defraud" – is independently fatal to the sufficiency of the government's evidence. In light of any or all of these

three flaws in the government's case, therefore, this Court should reverse Mr. Hall's convictions and remand the case with instructions that the district court enter a judgment of acquittal. *Havelock*, 664 F.3d at 1296.

## II. The district court erred in failing to conduct a hearing into Mr. Hall's competency to stand trial.

### A. Standard of Review

This Court "employ[s] a practical standard to review the denial of a motion for a competency hearing," asking "whether a reasonable judge, situated as was the trial judge who denied the motion, should have experienced doubt with respect to the defendant's competence." *United States v. Duncan*, 643 F.3d 1242, 1247 (9th Cir. 2011). The Court "engage[s] in a 'comprehensive' review of the evidence, and [is] 'not limited by either the abuse of discretion or clearly erroneous standard.'" *Id.* (quoting *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (*en banc*)). Even if the defendant files no motion, the district court must conduct a competency hearing *sua sponte* where there is "reasonable cause" to believe that the defendant is incompetent to stand trial – and this obligations extends through the course of the defendant's trial and sentencing. 18 U.S.C. § 4241(a); *United States v. Dreyer*, 705 F.3d 951, 961 (9th Cir. 2013).

## B.    A reasonable judge should have experienced doubt with respect to Mr. Hall's competence.

"A criminal defendant has a constitutional due process right not to be tried or convicted while incompetent to stand trial." *Maxwell v. Roe*, 606 F.3d 561, 564 (9th Cir. 2010). This right, deemed "'fundamental to an adversary system of justice,'" serves to "assure[] that a defendant has the present ability to consult with counsel, to understand the nature and object of the proceedings against him, and to aid in the preparation of his defense." *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)).

In 18 U.S.C. § 4241 Congress codified these principles, provided a mechanism for either party to request a hearing regarding the defendant's competency, and specified that the court "shall grant" such a motion if there is "reasonable cause" to question the defendant's competency:

> **(a) Motion to determine competency of defendant.--**At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

The statute further specifies that such a hearing "shall be conducted pursuant to the provisions of section 4247(d) (*id*. § 4241(c)), meaning that the defendant must be given the opportunity to testify and present evidence, and to subpoena, confront, and cross-examine witnesses. *Id*. § 4247(d). (The complete statute is reproduced in the addendum to this brief.)

Before trial, Mr. Hall's appointed trial lawyer filed a Motion to Determine Competency in which he requested "a preliminary hearing under 18 U.S.C. § 4241."[85] Counsel explained that his "problematic" communications with Mr. Hall had raised questions about Mr. Hall's "'ability to consult with his lawyer with a reasonable degree of rational understanding,'" as well as his understanding of the proceedings (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).[86] Over the course of the ensuing pretrial, trial, and post-trial proceedings, Mr. Hall's counsel repeatedly raised concerns about Mr. Hall's cooperation, communication, and understanding.[87] The court effectively denied Mr. Hall's motion by declining to hold a hearing (and at one point mistakenly stating that no such motion was pending[88]), and repeatedly reiterating its conclusion that Mr. Hall's apparent lack

---

[85] ER Vol. 2 at 140-44.
[86] ER Vol. 2 at 141.
[87] *Id*. at 140-44, 146, 236:24-237:12; ER Vol. 3 at 307:11-13, 353:21-354:4; ER Vol. 5 at 1025-33, 1065:19-24; ER Vol. 6 at 1117-84.
[88] ER Vol. 2 at 161:3-4.

of understanding was "feigned" and did not represent a lack of competence.[89] Although several discussions touching on Mr. Hall's competency (several of them *ex parte*) were held, that is all they were – discussions, involving the court, Mr. Hall, and Mr. Hall's counsel. At no point did the court conduct an evidentiary hearing of the sort described in section 4247(d), which would include the opportunity to present evidence and to subpoena, confront, and cross-examine witnesses regarding the "difficult" and "nuance[d]" matter of Mr. Hall's competency to stand trial. *Drope*, 420 U.S. at 180.

This was error, because a reasonable judge would have at the very least found "reasonable cause to believe" that Mr. Hall might be incompetent to stand trial. 18 U.S.C. § 4241(a). The record evidences seven compelling facts supporting such a belief.

• Both directly and through his actions and statements described for the court by his counsel, Mr. Hall repeatedly conveyed his view that the proceedings had nothing to do with him, and that he was entitled to be released regardless of their outcome – including one instance in which he evidently wandered out of the courtroom.[90] *Drope*, 420 U.S. at 180 (evidence of defendant's "irrational behavior" may signal need for "further inquiry"); *United States v. Auen*, 846 F.2d 872, 878

---

[89] *Id.* at 162:3-7; ER Vol. 6 at 1136:21-1137:7, 1154:7-8, 1167:23-25.
[90] ER Vol. 2 at 12:20-21; ER Vol. 3 at 353:21-22; ER Vol. 6 at 1164:21-1165:10.

(2d Cir. 1988) (defendant's defiance of court and expression of bizarre beliefs, including that payment of taxes is voluntary, signaled need for hearing).

• Consistently with this view, Mr. Hall persistently refused to assist his counsel in preparing for trial or sentencing, at one point walking away when his counsel asked him about preparing for jury selection.[91] *Maxwell*, 606 F.3d at 570 (fact that defendant's communication with attorney was "strained" and impaired counsel's ability to prepare for trial supported need for hearing); *cf. Duncan*, 643 F.3d at 1250 (evidence that defendant's "unusual beliefs played a significant role in his decisions about how to conduct his defense" supported need for hearing).

• Mr. Hall willfully tarnished his image in the eyes of the jurors by opting to appear in court in prison garb, sitting through the proceedings with his eyes closed "like he could care less," and refusing to stand when the jurors entered the courtroom.[92] *Torres v. Prunty*, 223 F.3d 1103, 1109 (9th Cir. 2000) (fact that defendant "insisted on wearing jailhouse blues" supported need for hearing).

• When asked to interact with the court, even with respect to such simple matters as acknowledging his identity, Mr. Hall was consistently incoherent and

---

[91] ER Vol. 2 at 140-44, 146, 236:24-237:12; ER Vol. 3 at 307:11-13, 353:21-354:4; ER Vol. 5 at 1025-33, 1065:19-24; ER Vol. 6 at 1117-84.
[92] ER Vol. 2 at 220:20-223:7; ER Vol. 3 at 307:11-13; ER Vol. 4 at 828:9-12; ER Vol. 6 at 1148:22-1157:2.

non-responsive.[93] *United States v. Neal*, 776 F.3d 645, 657 (9th Cir. 2015) (defendant's "bizarre or erratic behavior – especially in court" may signal need for hearing).

• Despite being represented by counsel, Mr. Hall filed numerous bizarre and incoherent papers with the court, beginning before trial and continuing after the entry of the judgment.[94] *Duncan*, 643 F.3d at 1249-50 (defendant's letters evidencing "unusual beliefs" supported need for hearing).

• Multiple statements and expressions of concern from Mr. Hall's counsel – the one who had "the closest contact with [Mr. Hall]" during the proceedings – raised serious concerns about his competency. *Drope*, 420 U.S. at 177 n.13 (internal quotation marks omitted).[95]

• Most striking of all was Mr. Hall's egregiously "self-defeating behavior" with respect to the government's proffered plea agreement. *Maxwell*, 606 F.3d at 575. The record confirms that Mr. Hall had ample opportunities to accept a plea deal under which his sentence in the instant case would not have required him to spend a *single day* in prison, beyond the time he was already serving in connection

---

[93] ER Vol. 2 at 12:11-16, 123:8-13, 161:22-162:2; ER Vol. 5 at 1057:10-23; ER Vol. 6 at 1117-84.

[94] ER Vol. 2 at 88-91; ER Vol. 5 at 1020-23, 1092-98.

[95] ER Vol. 2 at 140-44, 146, 236:24-237:12; ER Vol. 3 at 307:11-13, 353:21-354:4; ER Vol. 5 at 1025-33, 1065:19-24; ER Vol. 6 at 1117-84.

with the District of South Carolina case.[96] Instead of taking this deal, Mr. Hall

persisted in his bizarre behavior, allowed the plea offer to lapse, went to trial

without assisting his attorney, and ended up with *96 months* of prison time

consecutive to the prison term imposed in the District of South Carolina case.[97]

That Mr. Hall would persist in his bizarre behavior even in the face of such risks

and opportunities strongly suggests – and may even suffice by itself to show – that

there was "reasonable cause" to question his competency. *Drope*, 420 U.S. at 180

(noting that "even one of [the pertinent] factors standing alone may, in some

circumstances, be sufficient" to identify need for hearing); *Chavez v. United States*,

656 F.2d 512, 519 (9th Cir. 1981) (evidence that defendant "had not even

attempted to plea bargain" supported need for hearing).

There was admittedly other evidence tending to counteract these indications

of Mr. Hall's incompetency. The record suggests that there were times when he

communicated rationally with the court and his counsel.[98] A forensic psychologist

who examined him in connection with the District of South Carolina case found

him competent,[99] and the docket in the District of South Carolina case indicates

---

[96] ER Vol. 2 at 172:1-8, 210:3-213:5.

[97] ER Vol. 5 at 1088.

[98] ER Vol. 2 at 14:12-16, 15:12-16; ER Vol. 6 at 1124:8-11.

[99] Unopposed Motion to Correct Record and to File Attachment Under Seal (Attachment) (filed herewith).

that that court held a competency hearing and agreed with that assessment.[100] Although Mr. Hall's trial counsel repeatedly expressed concerns about his competency throughout the proceedings, at other points his counsel indicated that he believed Mr. Hall was competent.[101] But while these factors are certainly relevant, they do not overwhelm the powerful evidence identifying reasonable cause to question Mr. Hall's competency. Indeed, these factors did not constitute particularly compelling evidence of Mr. Hall's competency.

Mr. Hall's periods of apparent lucidity do not show that he was competent throughout his trial and sentencing. A defendant's competency may fluctuate over the course of a criminal proceeding. *Drope*, 420 U.S. at 181 ("[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change"); *Maxwell*, 606 F.3d at 575 ("we have repeatedly acknowledged that a defendant's competency can change within a short period of time"). Moreover, his conduct is consistent with a delusional disorder, a "common characteristic" of which is "the apparent normality of [the individuals'] behavior and appearance when their delusional ideas are not being discussed or acted on." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 93 (5th ed. 2013).

---

[100] *United States v. Hall*, No. 13-cr-170 (D.S.C.) (Entry No. 91).
[101] ER Vol. 6 at 1150:25-1151:1, 1160:16-17, 1168:14-16, 1178:6-7.

Mr. Hall's counsel's statements, including those in which he seemed to agree with the judge's determination that Mr. Hall was competent, are certainly relevant, but they are not dispositive. This Court has "recognized that 'counsel is not a trained mental health professional and his failure to raise petitioner's competence does not establish that [his client] was competent.'" *Maxwell*, 606 F.3d at 574 (quoting *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001)).

A medical expert's report is likewise not dispositive. *Pate v. Robinson*, 383 U.S. 375, 386 (1966). Moreover, such a report carries little weight where, as here, it is not contemporaneous with the defendant's trial and is a mere "short form letter[]." *Maxwell*, 606 F.3d at 575, 577. Indeed, the forensic psychologist's conclusions with respect to Mr. Hall's competency rested largely on the psychologist's "review of multiple website postings" relating – not to Mr. Hall specifically – but to what the examiner deemed to be Mr. Hall's "defense strategy."[102] The psychologist's premise that Mr. Hall's behavior amounted to a "defense strategy" is difficult to reconcile with the fact that this behavior involved alienating the judge and jury, handicapping his own attorney, and refusing a plea deal that would have capped his sentence at *zero* additional months of custody – all of which contributed to his instead receiving *96* additional months of custody.

---

[102] Unopposed Motion to Correct Record and to File Attachment Under Seal (Attachment) at 6.

This Court's role is to "comprehensive[ly]" (*de Kaplany*, 540 F.2d at 983) review this evidence, not to determine "whether the trial court could have found [Mr. Hall] either competent or incompetent, nor whether [this Court] would find [Mr. Hall] competent," but only whether "the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting [Mr. Hall's] competence." *Dreyer*, 705 F.3d at 960 (internal quotation marks omitted). On this record – particularly in light of Mr. Hall's incomprehensible decision to let the government's generous plea offer lapse – no other conclusion is possible. This Court should accordingly vacate Mr. Hall's convictions and remand the case with instructions that the district court hold an evidentiary hearing regarding Mr. Hall's competency and, if it determines that the matter cannot be reliably resolved, grant him a new trial. *Id.* at 965; *Maxwell*, 606 F.3d at 577.

## III. The district court imposed unlawful supervised release conditions upon Mr. Hall.

### A. Standard of Review

This Court generally reviews supervised release conditions for abuse of discretion. *United States v. Cope*, 527 F.3d 944, 949 (9th Cir. 2008). Where the defendant did not object in the district court to the sentencing error identified on appeal, this Court reviews for plain error. *United States v. Tapia*, 665 F.3d 1059, 1061 (9th Cir. 2011). To satisfy this standard, the appellant must show that there is

(1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

### B. Four of the supervised release conditions imposed upon Mr. Hall violate statutory and constitutional constraints.

A district court's authority to impose discretionary supervised release conditions is governed by 18 U.S.C. § 3583(d), which specifies that such conditions "are permissible only if they are reasonably related to the goal[s] of deterrence, protection of the public, or rehabilitation of the offender." *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006) (internal quotation marks omitted). Such conditions must also "'involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release.'" *Id.* (quoting § 3583(d)(2)). Moreover, because § 3583(d)(1) "requires that conditions of supervised release be 'reasonably related' to 'the nature and circumstances of the offense and the history and characteristics of the defendant,'" the court's imposition of a condition in a particular case must rest on an "individualized determination" that the condition will advance permissible purposes without unduly restricting the defendant's liberty. *Id.* at 566. This "requirement of individualization leaves no room for blanket policies applicable without individualized consideration." *United States v. Betts*, 511 F.3d 872, 878 (9th Cir. 2007). In addition, where a condition "implicates a particularly significant liberty interest of the defendant," the court must

"support its decision on the record with record evidence" that the condition meets these criteria. *Weber*, 511 F.3d at 561.

In addition to these statutory mandates, a defendant "has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002). A condition "violates due process of law if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007) (per curiam) (citations and quotation marks omitted).

Four of the supervised release conditions that the district court imposed upon Mr. Hall run afoul of these constraints.

### (1)    "[N]ot associate with any person convicted of a felony"

The court imposed the following condition regarding Mr. Hall's association with felons:

> You . . . shall not associate with any person convicted of a felony
> unless granted permission to do so by the probation officer.[103]

---

[103] ER Vol. 5 at 1090.

This condition requires Mr. Hall to secure the probation officer's permission before he may "associat[e]" with his children Benton and Shannon, both of whom have felony convictions.[104]

Because this condition infringes upon Mr. Hall's fundamental liberty interest in having contact with his own children, its imposition would be permissible only if the district court contemporaneously made on-the-record findings that the condition was supported by record evidence, was necessary to accomplish one or more of the factors listed in 18 U.S.C. § 3583(d)(1), and involved no greater deprivation of liberty than was reasonably necessary. *United States v. Wolf Child*, 699 F.3d 1082, 1091-94 (9th Cir. 2012). The court made no such findings here – and in fact did not discuss the condition at all, other than to impose it.[105] This omission constitutes plain error. *Wolf Child*, 699 F.3d at 1094-95.

In light of this plain error, this Court should vacate this condition and remand the case to the district court with instructions that it consider whether the condition should apply to Mr. Hall's children – and, if so, reimpose the condition only pursuant to the "special findings" required by this Court's precedent. *Id.* at 1087. In the alternative, this Court could expressly construe the condition as not

---

[104] CR Doc. 119; *United States v. Hall*, No. 13-cr-170 (D.S.C.) (Entry No. 256); ER Vol. 3 at 502:23-503:13.
[105] ER Vol. 5 at 1081:11-13.

45

applicable to Mr. Hall's children. *Id.* at 1095 n.3 (citing *United States v. Goddard*, 537 F.3d 1087, 1089 (9th Cir. 2008)).

### (2) "Work regularly at a lawful occupation"

The court imposed the following condition requiring Mr. Hall to "work regularly":

> You shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.[106]

This condition is impermissibly vague because it "fails to define 'regularly.'" *United States v. Kappes*, 782 F.3d 828, 849 (7th Cir. 2015); *Guagliardo*, 278 F.3d at 872.

### (3) "Support your dependents" and meet "family responsibilities"

The district court imposed the following condition requiring Mr. Hall to support his "dependents":

> You shall support your dependents and meet other family responsibilities.[107]

This condition is both inappropriate for lack of individualization and impermissibly vague. It is inappropriate because the presentence report reflects

---

[106] ER Vol. 5 at 1089.
[107] ER Vol. 5 at 1089.

that Mr. Hall's children are in their twenties or older,[108] and there is no indication that he has any "dependents." *Kappes*, 782 F.3d at 849. It is impermissibly vague because "it is not apparent what 'other family responsibilities' means," particularly as it evidently means something other than supporting his "dependents." *Id*.

### (4)    Major Purchases

The court imposed the following "major purchases" special condition on Mr. Hall:

> You are prohibited from making major purchases, incurring new financial obligations, or entering into any financial contracts without the prior approval of the probation officer.[109]

This condition is impermissibly vague, because Mr. Hall has no practicable way of knowing what constitutes a "major purchase." *United States v. Washington*, 584 F. App'x 846, 847 (9th Cir. 2014) (vacating this condition as impermissibly vague).

---

[108] Presentence Report at 13 (¶¶ 42-44).
[109] ER Vol. 5 at 1090.

### C. The district court's plain error in imposing these conditions requires that they be vacated.

Plain error is (1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Tapia*, 665 F.3d at 1061.

The district court's imposition of each of these conditions was error for the reasons set forth above. These errors were plain because the authority cited above was on the books at the time of Mr. Hall's sentencing, and clearly established that the district court could not impose conditions that substantially infringed upon Mr. Hall's liberty and subjected him to vague mandates without reasonably advancing permissible purposes, with no explanation, and with no apparent consideration of his individual circumstances. Moreover, because "the condition[s] would not have been imposed had the error[s] not occurred, [they] necessarily affected substantial rights." *United States v. Barsumyan*, 517 F.3d 1154, 1162 (9th Cir. 2008); *accord United States v. Abbouchi*, 502 F.3d 850, 858 (9th Cir. 2007)). These errors also seriously affected the fairness of Mr. Hall's sentencing. *See Abbouchi*, 502 F.3d at 858 (imposition of supervised release condition without adequate justification seriously affected fairness of judicial proceedings); *Barsumyan*, 517 F.3d at 1162 (same).

48

The Court should accordingly vacate these conditions and remand the case with instructions that the district court omit them from its amended judgment, revise them to address the flaws identified above, or support them with the evidence and findings required by the governing law.

## Conclusion

For the reasons set forth above, this Court should reverse Mr. Hall's convictions on the ground of insufficiency of the evidence and remand the case with instructions that a judgment of acquittal be entered, reverse his convictions on the ground that the district court erred in failing to conduct a competency hearing and remand the case with instructions that the district court either conduct a hearing on his competency at the time of trial of grant him a new trial, or vacate his sentence in light of the district court's imposition of unlawful supervised release conditions and remand the case for resentencing.

Respectfully submitted on April 5, 2016.

s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007-2730
(602) 382-2767

49

**[THIS IS A BLUE SHEET]**

## STATUTORY ADDENDUM TABLE OF CONTENTS

**PAGE**

18 U.S.C. § 514 .......................................................................................... ii

18 U.S.C. § 4241 ........................................................................................ iii

18 U.S.C. § 514

## § 514. Fictitious obligations

**(a)** Whoever, with the intent to defraud--

> **(1)** draws, prints, processes, produces, publishes, or otherwise makes, or attempts or causes the same, within the United States;

> **(2)** passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States; or

> **(3)** utilizes interstate or foreign commerce, including the use of the mails or wire, radio, or other electronic communication, to transmit, transport, ship, move, transfer, or attempts or causes the same, to, from, or through the United States,

any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization, shall be guilty of a class B felony.

**(b)** For purposes of this section, any term used in this section that is defined in section 513(c) has the same meaning given such term in section 513(c).

**(c)** The United States Secret Service, in addition to any other agency having such authority, shall have authority to investigate offenses under this section.

**CREDIT(S)**
(Added Pub.L. 104-208, Div. A, Title I, § 101(f) [Title VI, § 648(b)(1)], Title II, § 2603(b)(1), Sept. 30, 1996, 110 Stat. 3009-367, 3009-470.)

18 U.S.C. § 4241

## § 4241. Determination of mental competency to stand trial to undergo postrelease proceedings

**(a) Motion to determine competency of defendant.--**At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

**(b) Psychiatric or psychological examination and report.--**Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c).

**(c) Hearing.--**The hearing shall be conducted pursuant to the provisions of section 4247(d).

**(d) Determination and disposition.--**If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--

    **(1)** for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

    **(2)** for an additional reasonable period of time until--

**(A)** his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

**(B)** the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

**(e) Discharge.--**When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings. Upon discharge, the defendant is subject to the provisions of chapters 207 and 227.

**(f) Admissibility of finding of competency.--**A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged.

**CREDIT(S)**
(June 25, 1948, c. 645, 62 Stat. 855; Pub.L. 98-473, Title II, § 403(a), Oct. 12, 1984, 98 Stat. 2057; Pub.L. 109-248, Title III, § 302(2), July 27, 2006, 120 Stat. 619.)

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B)

I hereby certify that, pursuant to FRAP 32(a)(7)(B), the foregoing

Defendant-Appellant's Opening Brief is proportionately spaced, has a typeface of

14 points, and contains 10,370 words.

 s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
*Attorney for Defendant - Appellant*

## STATEMENT REGARDING RELATED CASES

Challenges to conditions of supervised release conditions similar to those

raised in the foregoing brief are raised in *United States v. Bitsinnie*, No. 15-10330

(9th Cir.).

 s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
*Attorney for Defendant - Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I caused the foregoing Defendant-Appellant's Opening

Brief to be submitted to the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit on April 5, 2016, using the appellate CM/ECF

system. I further certify that all participants in the case are registered CM/ECF

users and that service will be accomplished by the appellate CM/ECF system.


 s/*Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
*Attorney for Defendant - Appellant*